and we'll hear argument next in Upstate Tower Co., LLC v. Southline Little League, 24165. Good morning, Your Honors. May it please the Court, John Devendorf, Barred Redeemment, on behalf of the plaintiff's appellate, Upstate Tower. We've asked in this appeal, Your Honors, that the District Court's ruling on Upstate Tower's summary judgment motion be reversed, that the decision on Southline's summary judgment motion be reversed, and that under either circumstances, the de-ruling in favor of Southline be reversed. Your Honors, simply said, the District Court erred by shifting all of the responsibility associated with the underlying lease and the representation, contractual representation, that had been made by Southline to Upstate Tower. The Court did that in a number of ways. First, in reading the contractual representation, the Court included only part of it in its rationale, namely that there was an encumbrance within the deed, and it ignored the part of the language that the encumbrance is one that needs to have an impact on the underlying property, the underlying use of the property. Why is that different? I mean, the encumbrance is about the use of the property. That's what the encumbrance is. It is, Your Honor, but in interpreting the provision, the District Court said that the language was simply whether or not there was an encumbrance on the property and Upstate Tower was aware of it. Therefore, Upstate Tower has no right. So does this all turn on the idea that there's some ambiguity in the encumbrance? In other words, suppose the encumbrance said, this property is conveyed to Southline Little League Incorporated with the covenant that it shall never be used for a cell tower. Would the case be the same, in your view, or different? Well, it would be different if that language was as specific as Your Honor just mentioned here, the encumbrance related to the charter of Southline. Well, it says it shall be used for recreational purposes. It doesn't say we're conveying this to the Southline Little League on the understanding that so long as most of it is used for recreational purposes, if some of it is used for a commercial venture to make money to support the recreational use by Southline Little League, that'll be okay. It doesn't say anything like that. It says the land shall be used for recreational purposes. Right, but we also know that... It says recreational purposes according to the charter of the Little League, meaning, I suppose, building a casino wouldn't be allowed. Right, but Your Honor, we also know that there were other or different uses than recreational purposes. There is the concession stand, there's raffles, there's a variety of things that may relate in some way to recreational purposes. So you're saying that the reference merely to the charter without further reference to the recreational purposes limitation is not enough? Is that what you're saying? What we are saying is that we have a contract with a valid entity. They represent that there is no encumbrance that will impact the ability to use the property for the Southline. That is not a representation that the appellant made. That is the contractual representation that was made by Southline. In a document that you wrote? Sure, Your Honor. Is that a representation that they had ever made to you before it was put into the contract? Because I'm looking at the New York Court of Appeals case, DDJ, which I think is your strongest case. And that was a case in which what was misrepresented was the earning, in which a company went to the bank and asked for a $40 million loan and made representations from the very beginning about their earnings, something that they had a unique ability to know about. Well, not necessarily unique. The bank could have made it, turned over more documents. But they made repeated representations that they had enough money to cover this. And the bank said, well, okay, we'll lend you the money if you put that in writing. That's not quite this case, is it? Your Honor, it is in writing. It is a contractual representation. Yeah, and the New York Court says ordinarily or often in that situation, we shouldn't put the burden back on the party that asked for the representation. I get that. But they keep saying often or ordinarily. They don't say there are no exceptions to that. What they hold is that on the facts of that case, it was improper to disregard the contractual representation. And if I follow that thread, Your Honor, on the facts of this case, look what happened. There is a denial of the permit. Yeah, a denial of the permit for like four different NIMBY reasons before you even get to the fact that it would violate the terms of the deed. Exactly. But then consider what happens next, which is Upstate pursues its right under the Telecom Act. Right, and you want to use – and you want them to pay – you want the Little League to pay for your litigation against – Not at all. That's what you're asking for was your attorney's fees. Correct, but that can be prorated as it relates to the real estate issues that occurred in this case. Because what happened is after we filed the Telecom Act, the Telecom Act case includes not only the other grounds that the town denied, it also includes the contractual issue that came up with respect to the real estate. What happened in the Chichester court case, none of the Telecom Act claims were even adjudicated. What occurred is that the real estate issue took front and center. There's first a ruling on recreational uses that was adverse to Upstate. Then there's a ruling on an RPAPL section as to whether the restriction even applied. Again, adverse to Upstate. Upstate was the only one defending against those issues. We put Southlay on notice. We raised the issue under the lease that we were going to incur damages as a result of addressing these issues, that these are issues that they should address because it's their contractual representation that the property is usable for this purpose. And Upstate never got to address the Telecom Act claims because of the ruling on the real estate claim. So, Your Honor, I understand your point about there being other grounds, but the only ground that was actually the subject of the case was the real estate ground, and that relates to the contractual representation that was made. It is those fees that Upstate has done. And you're seeking the fees for the litigation or also for the application, attorney's fees expended in the application to the town? The litigation. Just litigation. And I see my time is up. One question. Could those be described as consequential? Not here, Your Honor. Respectfully, I understand that that is the position that the district court took. It's the position of Southline. But here, what happened is exactly the direct result of the lease itself. There was a challenge by a third party, namely the school district, to the ability for my client to use the property for this purpose. Southline doesn't defend that claim. In fact, Southline, in response to the claim, sought to rescind the lease on mutual mistake of the grounds. So aside from defending, they are actually going on the offensive, if you will. So my client had to defend. It is not only foreseeable, it is the direct result of that third party challenging. Wouldn't your ordinary damages for their breaching the lease be what you had to pay in excess of what you would have paid them for buying or leasing alternative property? If you don't get what you bargained for, isn't that the normal measure of damages? I think that is part of the measure of damages, but it's not the exclusive measure of damages. Here, the very damage that occurred by my client was having to defend against a revenue warranty that was made by Southline. Thank you. Thank you very much. And you have reserved some time for rebuttals. Good morning, Your Honor. May it please the Court, John Mancuso from the firm of Mancuso Wright, LLC, for Ethylee, Southline Little League. I just want to start off by pointing out in the record and in response to interrogatory— That's a stupid question, but is your law firm based in Chihuahua or in Buffalo? No, Your Honor, based in Rochester, New York. So slightly to the east. I'm fine. Very good. Thank you, Your Honor. They, in fact, did seek, as part of their claim for attorney's fees, the costs that they incurred with respect to the zoning application before the town of Chihuahua. I heard counsel concede that that is not what they are seeking. I just want to point that out. But let's speak about really what the focus of the district court was, which is the attorney's fees and whether or not those claims are recoverable under a clear waiver of consequential damages that upstate power themselves drafted and provided to Southline. That was a provision they put in, but no one thought well that there was a restrictive covenant on the property at the time that they entered into the lease. And what they are asking for is that this court effectively disregard that waiver and instead award them all the costs that they voluntarily incurred through their dealings with the town of Chihuahua, through their litigation that they affirmatively interposed in the Western District of New York against the town only. This was a telecom case to start, and not even involving Southline. They want all of their fees associated with their voluntary actions having nothing to do with Southline, in this case for… Well, it sounds like there's also been another, I don't know if I'd call it a concession, but a clarification perhaps of what damages they're seeking. I think it's now said that they want to prorate the attorney's fees to only those that were associated with this particular claim of violation. I'm not sure I'd sort that out, but only with respect to this claim, not anything that was addressed to the telecom. Yes, Your Honor, I did hear that during oral argument, and all I can say is that the record is silent in that regard as to those measures of damages or how one would prorate them. In response to our statement of undisputed facts at the district court, there were two important facts that the court relied upon in terms of making its ultimate determination that all damages were waived under the consequences of damages provision. And you have at record 1158, paragraph 1559, both the recognition that the damages were limited to the cost of the underlying litigation with the town and the district and the costs and fees of the zoning application, and paragraph 59 that no other damages were claimed. So both questions asked sort of in a converse to pin down what exactly it was they're seeking. So, you know, no factual record has been developed with regards to now the claim that we're going to prorate under the Telecom Act. And if I can speak to that, you know, the idea that they couldn't have litigated that if they wished to do that is simply not supported by the record. I mean, they interposed the complaint, and I understand that through the actions of the town and the district, ultimately the legal issues they chose to litigate turned into an issue of the restrictive covenant. That did not preclude upstate power if they so choose to try to litigate, whether or not independently of any restrictive covenant there was a violation of the Telecommunications Act that would have given them independent recourse. They walked away from those claims during oral argument on summary judgment, and the court noted that in its decision. So they waived their rights under that, and it is possible to know, as the court pointed out, there's one of many reasons identified in the town's decision as to why they denied the permit, not simply because there was a restrictive covenant in place. We have no way of knowing on this record what, if any, grounds may have been upheld or reversed by the district court in response to the suit because, again, the plaintiff weighed the claim. The law governing damages is well established both in New York State and in the federal Second Circuit. It's the natural and probable consequences of each breach. That is the general damage standard, and as this court pointed out, the difference in the value of what we bargained for and what they received would have been a measure of general damage had they pursued it. But they have not pursued that claim, and I think the reason they can't is because they never paid anything. Under our lease, their rental payments were not even triggered under the lease because they could not construct the tower and they did not receive the approval from the town. So there was no injury in terms of rental payments and otherwise that directly flowed from the lease. All of this is through a subsequent additional loss that's one step removed from the promised performance by a sound client. By definition, under this court's precedent and the New York State Court of Appeals, that is consequential damage. It says that's the only claim that's being raised by upstate. It has been waived by the clear and unambiguous waiver. Let me ask just a couple of factual questions. Your client is a not-for-profit corporation. Is that right? That is correct, Your Honor. And is there anything in the record about who the directors of that corporation are or, in particular, are they paid for their service or are they volunteers? They are volunteers. Is that in the record somewhere? I believe so. I believe that is in the record in the affidavits provided by the south line, which would have been the Missouri affidavit 394-512. I believe that is recited in the affidavit. I know the court's decision certainly referenced that. And the gentleman who negotiated this on behalf of your client, is he an attorney? No, he is not. But is that in the record? The affirmative statement that he is not an attorney is not in the record. He submitted an affidavit indicating that at one point he was the president of the board, but he is not an attorney. And I believe if one reviews a deposition transcript, I believe his background was fleshed out in the transcript that he did not represent. Is it Mr. Carpenter? Mr. Carpenter would be the representative of upstate, I believe. Yeah, I'm asking about New York. Missouri. Okay. So if I may pivot for a moment to the fraud claim. The fraud claim was, I believe, properly dismissed by the court for a couple of reasons. But, you know, I'd like to start with the idea that the district court, according to the appellate, did not view the facts in light most favorable to upstate. I think that's a lie by the court's analysis. They went through a way of both in light of the facts most favorable to upstate and in light of the facts most favorable to Southline. But critically, upstate didn't submit any affidavits from anyone, whether a principal or Mr. Carpenter or otherwise, to actually speak to what was going on, you know, in terms of personal knowledge of upstate at the time. So what we have here is an attorney relying on arguments from a contract in order to then, you know, elaborate on what their position may have been. So, you know, I think there's a significant factual problem with their motion for summary judgment to start with. But in any event, in view of any of the facts, you know, in the light most favorable to them, we still have a problem. You know, they had the restrictive covenant in their possession ahead of time, a restrictive covenant that is unambiguous. We know it's unambiguous because the court resolved this issue on a 12-B motion on the plea. And they had it before your client did. They did, Your Honor. Not only did they have it before my client, but we didn't even know about it until afterwards. And they modified the exhibit A and snipped the legal description right out so we would have no way of knowing that that was, in fact, in there. Well, I mean, I think there's a distinction, is there not, between your client's not having a copy of the deed in its possession and your client not knowing of a restriction that was in a deed that presumably somebody saw back at the time that the property was conveyed. How long ago was the property conveyed? 1985, Your Honor. That's a long time ago. Yes, and none of the board members at the time of this volunteer board were obviously sitting on the board in 1985 when the deed was conveyed. So, Your Honor raises a fair point, but no knowledge of the restriction certainly in the record bears that out. But no way of even knowing without the deed having been given to them. It was in the exclusive possession of upstate. That's what caused this problem in the first place. But it's on record somewhere. I mean, it wasn't in their exclusive possession because they were the grantor or something like that. It was in their possession because they took the trouble to go down to the town hall and look at it. Correct. And in principle, your clients could have done the same thing. They could have, but they didn't. And they were on notice. I mean, I guess I should be asking you to decide this, but at least my understanding of the facts was that they asked you for a copy, and your team said, we don't have that. And then they said, oh, never mind. We have it. That's the dialogue, right? More or less in substance. Yes, Your Honor, in substance. They eventually reached out to their attorney to get a copy of the deed, and that's found at page 1059 to 65 of the record. That's an email from their counsel attaching a deed to them and providing it to them. And so what I think that this boils down to is an issue of justifiable belongings. They had a clear on it. They knew it was restriction. They were in the business of developing cell towers and real estate. They can read a restriction to determine whether or not precluding anything besides recreational use is going to be a problem. I mean, that's why I raised the question with your adversary earlier about what if it were absolutely an unambiguous thing, and does their case entirely turn on disputing your statement that this is clear and unambiguous? That they're saying it's not clear and unambiguous because maybe it could be construed to say so long as the basic use of the property is recreational, then just as they can have concessions or do other things, fundraising raffles or something on the property in support of their mission, so they could also raise money by selling off some portion, they say a small portion in this case, but some portion of the property to raise money for their purposes. That's kind of what their argument is, I think. I agree with their argument, and I think that argument is simply unreasonable per se in light of the unambiguous nature of this restriction. I mean, the court did not struggle to dispose of it on a 12-P motion, and by definition, it did not define an ambiguity. It was unambiguous. And I think this Court's precedent, and I think New York State Court precedent would say that whether you have justifiable reliance in terms of a warranty, two things. Number one, was there any independent representation in addition to what was said in the lease? We had nothing in the record suggesting there was any statement in addition to what they're simply relying on in the lease itself. In fact, their pleading is just a carbon copy between those two counts of fraud and breach of contract. It's the same statement that they're relying on for both. But clearly, a warranty is not going to save a fraud claim if it's based on something that is false or completely unreasonable. And that's what I would submit as this case in light of the clear nature of the restriction. So I see that my time is up on this report. Is there any further questions? I would invest in my papers. Thank you very much. Thank you. A few comments in rebuttal. First, bear in mind that South Point did have counsel. We keep talking about this as if it's in the abstract, that they weren't aware, they didn't know, or they're not sure. We're also talking about it in the abstract as if a not-for-profit is somehow let out of or held less responsible for a contract that signs. Here, they had counsel. They had the lease. They reviewed the lease, and they signed the lease. And the lease contains a rep that there are no encumbrances that will affect the use of the property for this purpose. I disagree with what counsel says about it being so clear that it was evident. The fact of the matter is the school district did the bidding. There was substantial contested proceedings, after which a motion was submitted. The district court determined in elaborate ruling that this was not a recreation purpose. Then they went back and addressed the real property issue. And all of that, again, Your Honors, is something that my client had to defend. Whether we were aware that there was a restriction on the property or not is not the issue. Well, the question – no, I think you would agree that if the – I think you did agree, but maybe I misconstrued your answer, that if the restrictive covenant specifically said no cell towers and you were aware of that, that you would not have a case. Or you would not have this case anyway. That would not be this case. So can you tell me exactly what the ambiguity is that would permit, under this restrictive covenant, the leasing of property to make money by having somebody construct a cell tower on it? As we had argued below, we viewed it to be consistent with an ancillary use. In today's society – Ancillary to recreational purposes. Correct. A cell tower is – I mean, like if you set up a refreshment stand, that would seem to be somewhat clearly ancillary to people playing soccer on the field getting a drink. So are kids calling their parents to get their ride home. So are a variety of other uses that you make having coverage, cell coverage, available. So the reason this lease was taking place on their behalf was not just to get a profit that they could plow back into their enterprise, but was to make sure that the kids could call home? Your Honor – It's an ancillary use to baseball? It could be a multitude of purposes, Your Honor. Certainly they wanted to make money. Certainly that's why they entered the lease. Certainly they're charged with the same knowledge that us, they had, relative to it, and they entered the lease. If you're both charged with the same knowledge, I think you've got a problem because you're claiming that you're reasonably relying on their knowledge, not that you had the same knowledge that they did. We are reasonably relying on their contractual representation. Okay, I got it. The only other item I would note is that in the Meats and Bounds description, there is no findings toward conduct there. There is an exhibit to the lease. It's the Meats and Bounds description. That's what was put in the lease. It's not any more complicated than that, and it's irrelevant because they were aware of the deed, as we've discussed. Thank you, Your Honor. Thank you so much. We'll reserve the decision. Thank you.